## Case No. 473.

### ANONYMOUS.

[1 U. S. Law Int. 121.]

District Court, E. D. Pennsylvania. 1829.

SEAMEN—IMPRISONMENT IN FOREIGN JAIL — CONSULAR CERTIFICATE.

[1. A master is not generally justified in imprisoning seamen in foreign jails as a mere matter of discipline, unless there is danger in keeping the offender aboard, or he has committed some great crime; and during such illegal imprisonment a seaman cannot be charged with his board nor with his wages given to another hand.]

[2. The fact that a master, in inflicting such illegal imprisonment, acted on the advice of the consul, goes to show the absence of malice, but cannot justify the illegal act, nor deprive the injured parties of their legal remedies.]

In admiralty.

HOPKINSON, District Judge, said the practice of imprisoning disobedient and refractory seamen in foreign gaols is one of doubtful legality. It is certainly to be justified only by a strong case of necessity; it is not among the ordinary means of discipline put into the hands of the master. I am inclined to think there should be danger in keeping the offender on board, or some great crime committed, when this extreme measure is resorted to; it must be used as one of safety rather than one of discipline, and never applied as a punishment for past misconduct. The powers given by law to the master to preserve the discipline of his ship and compel obedience to his authority, are so strong and full, that they can seldom fail of their effect; they should be clearly insufficient before we should allow the exercise of a power which may so easily be made an instrument of cruelty and oppression; and may be so terrible in its consequences. A confinement in an unwholesome jail, in a hot and pestilential climate, may be followed by death or some disabling disease. In this case the libellants were taken from the prison when the vessel sailed on her return, and although one of them was able to do duty, the other was prevented by sickness for the whole voyage. I would rather altogether deny a power, which can be so seldom necessary, than trust it in hands in which it is so likely to be abused, and so difficult to be regulated. The master may, without the aid of foreign police officers, and dungeons, which he cannot control, even if kindly disposed in the treatment of his men, take measures of great strength to enforce the discipline of his ship. He may there confine a refractory sailor; he may stop his provisions; he may inflict reasonable personal correction, according to the enormity of the offence and the obstinacy of the offender; and, if he be incorrigibly disobedient and mutinous, he may discharge him; and withal he incurs a forfeiture of his wages. A firm and judicious exercise of these powers can hardly fail of reducing the most perverse to obedience. Without deciding the general question, whether the master of a vessel may, in any case, imprison a seaman in the jail of a foreign port, under the control and discipline of foreign police and its officers, for the mere maintainance of his own authority, I will examine the circumstances of the case under the principles mentioned. The judge decided that the circumstances of this case did not warrant the imprisonment of the men; and proceeded:

If the imprisonment in this case was unauthorized, the men cannot be charged with the expenses attending it—especially with their boarding which the master was bound to provide; nor is it just to forfeit their wages, or what is the same thing, charge them with the pay given to another hand. They have been punished for their misconduct by their imprisonment, and it would be to double the punishment, if these penalties were inflicted.

I will take this occasion to notice an error which I fear, has frequently, as in this case, misled our masters of vessels. They seem to believe that they may do anything, provided they can obtain the consent of the consul to it; which consuls are apt to give on very little consideration. When the mas-

ter, on his return, is called upon to answer for his conduct, he thinks it is enough to produce a consular certificate approving his proceeding, or to say he consulted the consul and acted on his advice. This is altogether a mistake. It is certainly a very prudent precaution to consult the consul in any difficulty; and if the case were fully and fairly stated to the consul, and his advice faithfully pursued, it would afford a strong protection on the question of malicious or wrongful intention, but it can give no justification or legal sanction to an illegal act, nor deprive those who have been injured by it of their legal rights and remedies.